UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT PIKEVILLE

CIVIL ACTION NO. 18-68-DLB

RONALD WARD                                                                           PLAINTIFF

v.                     **MEMORANDUM OPINION AND ORDER**

ANDREW SAUL,[1] Commissioner
of the Social Security Administration                                       DEFENDANT

\*\* \*\* \*\* \*\* \*\*

Plaintiff, proceeding pro se, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and the parties' dispositive motions, and for the reasons set forth herein, will **affirm** the Commissioner's decision.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

On April 20, 2011, Plaintiff Ronald Ward filed for a period of disability and Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI, alleging disability beginning on July 30, 2010. (Tr. 33). That application was denied initially on August 19, 2011 and was also denied upon reconsideration on October 7, 2011. *Id*. At Plaintiff's request, an administrative hearing was conducted, *id*., and on February 27, 2013, an Administrative Law Judge ("ALJ") found Plaintiff was not entitled

---

[1]     Andrew Saul was sworn in as Commissioner of Social Security on June 17, 2019, during the pendency of this action. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Commissioner Saul is automatically substituted as a party.

1

to benefits.[2] (Tr. 30–45). On September 2, 2014, Plaintiff again filed for a period of disability and DIB under Title II and SSI under Title XVI, alleging disability beginning February 28, 2011. (Tr. 18). This application was also initially denied, and then denied again on reconsideration. *Id*. At Plaintiff's request, an administrative hearing was conducted on May 4, 2017 before ALJ Melinda Wells. *Id*. On May 30, 2017, ALJ Wells ruled that Plaintiff was not entitled to benefits.[3] (Tr. 15–29). This decision became the final decision of the Commissioner on May 4, 2018 when the Appeals Council denied Plaintiff's request for review. (Tr. 9–11).

Plaintiff filed the instant action on June 21, 2018, claiming that the Commissioner's decision was not supported by substantial evidence and was based on legal error. (Doc. # 1). The matter has culminated in cross-motions for summary judgment, which are now ripe for adjudication.[4] (Docs. # 19, 21, and 23).

## II. DISCUSSION

### A. Standard of Review

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Colvin v. Barnhart*, 475 F.3d 727, 729 (6th Cir. 2007). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a

---

[2] This decision will be referred to as the "2013 ALJ decision."

[3] This decision will be referred to as the "2017 ALJ decision."

[4] Plaintiff filed two documents both styled as Motions for Summary Judgment. (Docs. # 19 and 21). Both were filed prior to the filing of the Commissioner's Motion for Summary Judgment (Doc. # 23). Out of an abundance of caution, the Court will consider the information and arguments presented in each.

2

conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Courts are not to conduct a de novo review, resolve conflicts in the evidence, or make credibility determinations. *Id*. Rather, the Court must affirm the Commissioner's decision as long as it is supported by substantial evidence, even if the Court might have decided the case differently. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999). If supported by substantial evidence, the Commissioner's findings must be affirmed, regardless of whether there is evidence favoring Plaintiff's side. *Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988). Similarly, an administrative decision is not subject to reversal merely because substantial evidence would have supported the opposite conclusion. *Smith v. Chater*, 99 F.3d 780, 781–82 (6th Cir. 1996).

When a claimant files an application for benefits under the same title of the Social Security Act as a previously determined application, the principal of res judicata places limits on the evidence that an ALJ can review when evaluating the second application. The Sixth Circuit has established that "the principles of res judicata can be applied against the Commissioner." *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997). "When the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." *Id.* A prior ALJ's legal and factual findings must not be altered unless new and material evidence is presented showing that the plaintiff's condition has significantly changed. *Id*.; *see also Blankenship v. Comm'r of Soc. Sec.*, 624 F. App'x 419, 425 (6th Cir. 2015).

Here, before considering whether Plaintiff was disabled, the ALJ determined that "there has been some worsening since [the] previous [ALJ] decision." (Tr. 26). As a

3

result, the findings from the 2013 ALJ decision were not binding, *see Drummond*, 126 F.3d at 842, but ALJ Wells granted them partial weight in the 2017 ALJ decision, (Tr. 26).

### B. The ALJ's Determination

To determine disability, the ALJ conducts a five-step analysis. Step One considers whether the claimant has engaged in substantial gainful activity; Step Two, whether any of the claimant's impairments, alone or in combination, are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform his past relevant work; and Step Five, whether a significant number of other jobs exist in the national economy that the claimant can perform. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). The burden of proof rests with the claimant on Steps One through Four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). As to the last step, the burden of proof shifts to the Commissioner to identify "jobs in the economy that accommodate the claimant's residual functional capacity." *Id.* The ALJ's determination becomes the final decision of the Commissioner if the Appeals Council denies review, as it did in this case. *See Thacker v. Berryhill*, No. 7:16-cv-114, 2017 WL 653546, at *1 (E.D. Ky. Feb. 16, 2017); (Tr. 9–11).

Here, at Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since February 28, 2011, the alleged onset date of disability. (Tr. 20). At Step Two, the ALJ determined that Plaintiff has "the following severe impairments: degenerative disc disease of the lumbar spine, degenerative joint disease of the knees, chronic obstructive pulmonary disease, depressive disorder not otherwise specified, and anxiety disorder not otherwise specified." *Id*. The ALJ determined that Plaintiff's other

4

impairment, degenerative disc disease of the cervical spine, was not severe. (Tr. 21). At Step Three, the ALJ concluded that Plaintiff does not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" in 20 C.F.R. § 404, Subpart P, Appendix 1. *Id*. Between Steps Three and Four, the ALJ found that Plaintiff possesses the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a), 416.967(a) with the following modifications and limitations:

> [H]e can stand and walk two hours out of an eight-hour workday and must be able to ambulate with a cane. He can occasionally climb ramps and stairs, stoop, or kneel; and can never crouch, crawl, or climb ladders, ropes, or scaffolds. He should avoid more than occasional exposure to unprotected heights, moving machinery, uneven surfaces, large bodies of water, and fumes, odors, dusts, gases, and poor ventilation. He can perform goal-oriented work that does not involve production rate quotas and involves no more than frequent changes in a routine setting.

(Tr. 23). Based on this RFC, the ALJ proceeded to Step Four and concluded that Plaintiff is unable to perform his past relevant work as a coal miner and a coal driver. (Tr. 27). Thus, the ALJ proceeded to Step Five and determined that there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 28). Accordingly, the ALJ ruled that Plaintiff is not under a disability, as defined in the Social Security Act, from February 28, 2011 to the date of her decision in 2017. *Id*.

**C. Analysis**

Plaintiff makes two claims in his Complaint. (Doc. # 1 at 3). First, Plaintiff claims that the decision is not supported by substantial evidence, but he fails to provide details in support of this claim. *Id*. Next, Plaintiff asserts that the decision was based on legal error, but Plaintiff fails to specify which error was made. *Id.* In his Motions for Summary Judgment, Plaintiff does not present any legal arguments. (Docs. # 19 and 21). Rather,

5

he generally argues that he is unable to work. (Doc. # 21 at 1–2). Plaintiff also lists the following impairments: fourth-stage black lung disease, fourth-stage throat cancer, and knee and back injuries. (Doc. # 19). Plaintiff, however, fails to explain how these impairments show the ALJ's decision was not supported by substantial evidence. Given the lack of specific arguments, and in view of Plaintiff's pro se status, the Court will review the entirety of the ALJ's decision to ensure the Commissioner's decision was supported by substantial evidence and contained no legal error; this review will include consideration of whether the ALJ properly considered Plaintiff's impairments.

### *1. New evidence will not be considered.*

As a preliminary matter, the Court will address Plaintiff's mention of fourth-stage throat cancer and fourth-stage black lung disease in his Motion for Summary Judgment. *See id*. As to throat cancer, Plaintiff does not provide any details, such as date of diagnosis; he also fails to provide any records showing such a diagnosis. *See id*. There appears to be no mention of cancer in the administrative record, *see* (Doc. # 13-1), and cancer is not listed on the Disability Report from the Field Office, despite explicit instructions on the form to include cancer if applicable, (Tr. 189). Under § 405(g), courts can remand a case to the Commissioner of Social Security based on new evidence, but the plaintiff must show "that the evidence is new and material, and that there is good cause for the failure to incorporate such evidence into the original record." *Leffel v. Comm'r of Soc. Sec.*, 30 F. App'x 459, 461–62 (6th Cir. 2002) (citing *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989)). The Court cannot remand here, however, as Plaintiff fails to produce medical records or otherwise put forth evidence

of throat cancer and also fails to show good cause for his failure to incorporate evidence of cancer into the record. *See* (Doc. # 19); *see also Leffel*, 30 F. App'x at 461–62.

As to Plaintiff's mention of fourth-stage black lung disease, *see* (Doc. # 19), the medical records show that prior to the date of the ALJ's decision, Plaintiff had complained of breathing problems, and imaging suggested that he had black lung disease, (Tr. 26, 318, 756). At the time of the ALJ's decision, however, the diagnosis was not conclusive, as Plaintiff had a follow-up appointment scheduled to determine more definitively whether he had black lung disease. (Tr. 26). Plaintiff's Motion for Summary Judgment appears to suggest he was conclusively diagnosed. (Doc. # 19 at 1). For the purposes of this opinion, the Court will focus on Plaintiff's condition *at the time of the decision*, as the Court is limited to the record. *See Cutlip*, 25 F.3d at 286. ("In determining the existence of substantial evidence, this court must examine the administrative record as a whole.") Additionally, remand under § 405(g) is inappropriate because Plaintiff has again failed to present evidence of the diagnosis or show good cause for failure to incorporate the diagnosis into the record. *See* (Doc. # 19); *see also Leffel*, 30 F. App'x at 461–62. The remainder of the Court's analysis will focus on the impairments included in the administrative record.

### 2. *The ALJ's determination is supported by substantial evidence.*

Next, because Plaintiff fails to specify which part of the ALJ's determinations was not supported by substantial evidence, the Court will determine if the ALJ's conclusions throughout the five-step analysis were supported by substantial evidence.[5]

---

[5] Step One calls for the ALJ to determine whether the claimant has engaged in substantial gainful activity. *Walters*, 127 F.3d at 529. The Court will not scrutinize Step One of the analysis, as the ALJ made a determination in Plaintiff's favor by finding that the Plaintiff had not engaged

7

### a. Severity of Impairments

First, the Court will examine whether the ALJ's findings at Step Two regarding the severity of Plaintiff's impairments were supported by substantial evidence. The ALJ found that the Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, degenerative joint disease of the knees, chronic obstructive pulmonary disease, depressive disorder not otherwise specified, and anxiety disorder not otherwise specified. (Tr. 20). The ALJ found that Plaintiff had one non-severe impairment— degenerative disease of the cervical spine. (Tr. 21).

The severity inquiry at Step Two is "a *de minimis* hurdle in the disability determination process" meant to screen out frivolous claims. *Higgs v. Bowen*, 880 F.2d 860, 862–63 (6th Cir. 1988) (internal quotations and citations omitted); *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 428 (6th Cir. 2007). As long as the ALJ finds at least one of the claimant's alleged impairments is severe in nature, the claim survives Step Two, and the ALJ moves on to the next step of the process. *See* 20 C.F.R. § 404.1520(a)(4); *McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 522 (6th Cir. 2008). Both severe and non-severe impairments are then considered during the remainder of the ALJ's five-step analysis, at which point it is "legally irrelevant" that some impairments were determined to be severe and others non-severe. *McGlothin*, 299 F. App'x at 522 (quoting

---

in substantial gainful activity since February 28, 2011. *See* (Tr. 20). Had the ALJ not made such a determination, she would not have been able to move on to the remaining four steps of the analysis. *Walters*, 127 F.3d at 529 ("If claimant is doing substantial gainful activity, he is not disabled."). Additionally, Step Four calls for the ALJ to determine whether a claimant can perform his or her past relevant work. *Id*. The Court will also refrain from examining this step of the analysis because the ALJ found favorably for the Plaintiff in deciding that Plaintiff could not perform his past relevant "heavy" work in the coal industry. (Tr. 27); *see also Walters*, 127 F.3d at 529 ("If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.").

*Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008); citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)).

Here, the ALJ found several severe impairments and one non-severe impairment. (Tr. 20–21). The finding that Plaintiff had at least one severe impairment required the ALJ to continue the five-step analysis. *See* (Tr. 20–29); *McGlothin*, 299 F. App'x at 522. In the remaining analysis, ALJ Wells considered all impairments, both severe and non-severe. *See* (Tr. 21–29). Thus, even assuming there was an error in determining the severity of some of Plaintiff's impairments, it would be harmless to Plaintiff, as the finding that at least one impairment was severe was favorable to Plaintiff and allowed the ALJ to continue her analysis. The Court finds no error in this part of the ALJ's analysis.

### b. Per Se Disabling Impairments

At Step Three, the ALJ found that none of Plaintiff's impairments were per se disabling. (Tr. 21–23). At this step, the ALJ determines whether the claimant's impairment meets or equals one of the listings in the Listing of Impairments located in Appendix 1 to Subpart P of the Regulations. *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011). The Listing of Impairments "describes for each of the major body systems impairments that [the SSA] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless or his or her age, education or work experience." 20 C.F.R. § 404.1525(a). If the claimant can satisfy the requirements of a Listed Impairment, then he or she "will be deemed conclusively disabled, and entitled to benefits." *Reynolds*, 424 F. App'x at 414.

For the Court to find that the ALJ's decision at this step was supported by substantial evidence, the ALJ must have "actually evaluate[d] the evidence, compare[d]

9

it to [the relevant listed impairment], and give[n] an explained conclusion, in order to facilitate meaningful judicial review." *Pasiak v. Comm'r of Soc. Sec.*, No. 19-1212, 2019 WL 6698136, at *2 (6th Cir. Dec. 9, 2019) (quoting *Reynolds*, 424 F. App'x at 416). The ALJ does not need to refer to listings that the claimant plainly does not meet but should discuss those listings for which the record raises a "substantial question" as to whether the claimant is disabled. *Sheeks v. Comm'r of Soc. Sec. Admin.*, 544 F. App'x 639, 641 (6th Cir. 2013) (quoting *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)).

In Step Three, the ALJ reviewed Plaintiff's degenerative disc disease under Listing 1.04, his right knee pain under Listing 1.02, his chronic respiratory disorders under Listing 3.02, and his mental impairments under Listings 12.04 and 12.06. (Tr. 21–23). Listing 1.04 (disorders of the spine) requires either evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication. 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.04. In examining whether Plaintiff's degenerative disc disease met Listing 1.04, the ALJ found no evidence of any of those three conditions in the medical records. (Tr. 21). To meet the requirements of Listing 1.02 (major dysfunction of a joint) for a knee impairment, the claimant must show inability to ambulate effectively. 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.02. The ALJ's decision reveals that she examined the medical records, which showed Plaintiff could ambulate effectively using a cane, and for this reason, she concluded that he did not meet the requirements of this listing. (Tr. 21–22). To meet the requirements of Listing 3.02 (chronic respiratory disorders), a claimant must meet certain criteria for forced expiratory volume. 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 3.00. The ALJ found Plaintiff did not

meet these criteria because he had never undergone a pulmonary function study. (Tr. 22).

As for anxiety and depressive disorders, the ALJ evaluated these under Listings 12.04 and 12.06, respectively. (Tr. 22). Paragraph B of the adult mental disorder listings requires either "extreme limitation" of one or "marked limitation" of two areas of mental functioning, such as the ability to understand, concentrate, and interact with others. 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.00(F). Alternatively, to meet either Listing 12.04 or 12.06, a claimant could satisfy criteria in Paragraph C of the adult mental disorder listings, which requires a claimant to show a persistent mental disorder of at least two years combined with ongoing treatment, which has achieved only marginal adjustment. 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.00(G). In her decision, the ALJ explained why Plaintiff's mental functioning impairments were only moderate in nature and referred to exhibits showing Plaintiff had more than a minimal ability to adapt to changes in environment and daily life despite the impairments existing for over two years. (Tr. 22–23).

In sum, the ALJ's decision demonstrates that she evaluated the evidence, compared it to the relevant listing, and then explained why Plaintiff's impairments did not meet or equal the criteria as required. *See Pasiak*, 2019 WL 6698136, at \*1. For this reason, the ALJ's decision that Plaintiff did not have a per se disability under the Listing of Impairments was supported by substantial evidence.

### c. Residual Functional Capacity

In between Steps Three and Four, the ALJ determined Plaintiff's RFC. An RFC is "an administrative assessment of the extent to which an individual's medically

determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p, 61 Fed. Reg. 34475 (July 2, 1996). Stated another way, the RFC is "what an individual can still do despite his or her limitations." *Id*. "In assessing the total limiting effects of [the claimant's] impairment(s) and any related symptoms, [the ALJ] will consider all of the medical and nonmedical evidence" in the record. 20 C.F.R. § 404.1545(e). However, the ALJ is only required to incorporate those limitations that he or she finds credible in the RFC assessment. *Irvin v. Soc. Sec. Admin.*, 573 F. App'x 498, 502 (6th Cir. 2014) (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)). A reviewing court gives "the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity . . . of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476 (citing *Walters*, 127 F.3d at 528).

Here, the ALJ found Plaintiff's RFC to be limited to the performance of "sedentary work" with some exceptions. (Tr. 23). Specifically, the ALJ determined Plaintiff could stand and walk two hours per workday; ambulate with a cane; occasionally climb ramps and stairs, stoop, or kneel; and perform "goal-oriented work that does not involve production rate quotas and involves no more than frequent changes in a routine setting." *Id*. In coming to this conclusion, the ALJ found that the Plaintiff's impairments could reasonably be causing the symptoms he alleged, but the ALJ did not find the Plaintiff's statements about the "intensity, persistence and limiting effects" of the symptoms to be consistent with the medical evidence. (Tr. 26).

The Court has reviewed the record and finds that the ALJ's RFC determination is supported by substantial evidence, as a reasonable person examining the record could reach the same conclusion. As for Plaintiff's mental impairments, a psychological consultative examiner—Leigh A. Ford, Ph.D.—diagnosed Plaintiff with depressive disorder, but found Plaintiff's limitations as a result of the impairment to be only slight to moderate. (Tr. 27, 338). Dr. Ford found Plaintiff's "ability to tolerate stress and pressure of day-to-day employment" and "ability to sustain attention and concentration towards simple repetitive tasks" only moderately limited. (Tr. 338). Additionally, Dr. Ford found Plaintiff's ability to "respond appropriately to supervision, co-workers, and pressures in a work setting" only slightly limited, and his impairments did not affect his ability to "understand, remember, and carry out instructions toward performance of simple repetitive tasks." *Id*.

As for Plaintiff's knee impairment, at a post-operation appointment in January 2016 two weeks after Plaintiff's right knee arthroscopy, Plaintiff reported feeling improvement in the knee, and he was ambulating with a straight cane. (Tr. 961). It was noted that Plaintiff was "progressing well," and Plaintiff was encouraged to increase activity. (Tr. 963). The next month, February 2016, Plaintiff had another follow-up appointment where he reported that he had little pain, and the treating physician determined that he could return to full activity. (Tr. 950–53). Plaintiff was treated at an emergency room in May 2016 for knee pain, but an x-ray revealed Plaintiff was only suffering from "mild osteoarthritic changes." (Tr. 731–50).

As for Plaintiff's breathing problems, they were not found to be acute, and no medication was prescribed. (Tr. 318, 756). Finally, as for Plaintiff's back impairment, a

January 2017 MRI revealed only mild to moderate central stenosis on most discs. (Tr. 982). Despite all of these impairments, it was reported in November 2016 that Plaintiff had been able to work in the crawl space of his home, (Tr. 845), and this fact further supports the ALJ's RFC determination, *see Helm v. Comm'r of Soc. Sec. Admin.*, 405 F. App'x 997, 1002 (6th Cir. 2011); *Bogle v. Sullivan*, 998 F.2d 342, 348 (6th Cir. 1993) (stating that an ALJ can consider household activities in "evaluating complaints of disabling pain or other symptoms").

In light of all of this evidence, a reasonable person could find the evidence sufficient to support the conclusion that Plaintiff can undertake sedentary work with limitations. Therefore, substantial evidence supports the ALJ's conclusion. *See Cutlip*, 25 F.3d at 286. The Court recognizes some conflicts exist in the record. For example, Plaintiff's wife reports that she engages in a significant amount of personal caregiving for Plaintiff due to his injuries, (Tr. 208) ("[I] have to do almost everything for him."), and Plaintiff describes being unable to leave his house, (Tr. 219). However, the Court is not permitted to "resolve [such] conflicts in evidence." *See DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (quoting *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012)). "If the Commissioner's decision is supported by substantial evidence, [the Court] must defer to that decision 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Colvin*, 475 F.3d at 730 (quoting *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005)). Because there is substantial evidence to support the ALJ's RFC determination, the Court will not re-weigh the evidence before the ALJ nor disturb her conclusion. *See DeLong*, 748 F.3d at 726; *Smith*, 99 F.3d at 781–82.

#### d. Performance of Jobs in the National Economy

At Step Five, the ALJ relied on vocational expert testimony to conclude that a significant number of jobs exist in the national economy that would allow Plaintiff to perform sedentary work with his limitations. (Tr. 28). To make this type of determination, an ALJ usually "poses a hypothetical question incorporating a claimant's residual functional capacity to a vocational expert, and asks how many jobs, if any, the claimant can perform." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(g), 416.920(g)). When creating hypothetical questions, the ALJ is only required to incorporate those limitations she finds credible. *See Casey*, 987 F.2d at 1235. An ALJ is not "required to rely on a VE's [vocational expert's] response based on limitations that she rejected." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 730 (6th Cir. 2013) (citing *Maziarz*, 837 F.2d at 247). "If the vocational expert is able to identify a significant number of jobs the hypothetical individual can perform, substantial evidence supports a finding that the claimant is not disabled." *Poe*, 342 F. App'x at 157 (citing *Davis v. Sec'y of Health & Human Servs.*, 915 F.2d 186, 189 (6th Cir. 1990)).

Here, the ALJ presented a hypothetical claimant with the same impairments as Plaintiff to the vocational expert. (Tr. 1051–53). The vocational expert determined such an individual could perform sedentary work, and the expert listed three jobs in the national economy—addresser, foundation maker, and eyeglass polisher—that would suit such an individual. (Tr. 1053). The ALJ also presented a hypothetical individual with Plaintiff's limitations to the vocational expert, but also stated that such individual would be "off task" fifteen percent of the day due to pain. (Tr. 1054). The vocational expert found such a

hypothetical individual would not be a candidate for any positions in the national economy. *Id*. In her decision, the ALJ rejected the second hypothetical, and instead found Plaintiff fit within the first hypothetical, as the ALJ found Plaintiff could perform the jobs of addresser, foundation maker, and eyeglass polisher. (Tr. 28). In the ALJ's RFC determination, she found Plaintiff limited to sedentary work with certain limitations. (Tr. 23). These limitations did not include any reference to being off task at work due to pain. (Tr. 26). Rather, the ALJ found Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were not consistent with the evidence. *Id*. Because the ALJ rejected limitations regarding pain, she was not required to rely on the vocational expert's response that someone off task fifteen percent of the day due to pain would not be able to perform work in the national economy. *See Rudd*, 531 F. App'x at 730. Because the ALJ relied on vocational expert testimony regarding a hypothetical claimant with Plaintiff's RFC, the ALJ's decision at Step Five was based on substantial evidence. Accordingly, the Court finds the entirety of the ALJ's five-step analysis to have been supported by substantial evidence.

### 3. *There is no legal error.*

In his Complaint, Plaintiff simply stated that the "Commissioner's decision was based on legal error." (Doc. # 1 at 3). Plaintiff failed to state which legal error, and his Motions for Summary Judgment offer no law to suggest any part of the decision amounted to reversible error. (Docs. # 19 and 21). As the decision was supported by substantial evidence, the Court finds no reversible error here.

III.   **CONCLUSION**

For the reasons stated herein, the Court concludes that the ALJ's finding that Plaintiff was not disabled for purposes of the Social Security Act was supported by substantial evidence, and there was no legal error.  Accordingly,

**IT IS ORDERED** as follows:

(1) The decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**;

(2) Plaintiff's Motions for Summary Judgment (Docs. # 19 and 21) are hereby **DENIED**;

(3) Defendant's Motion for Summary Judgment (Doc. # 23) is hereby **GRANTED**;

(4) This civil action is hereby **DISMISSED** and **STRICKEN** from the Court's active docket; and

(5) A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

This 29th day of January, 2020.

Signed By:
*David L. Bunning*  DB
United States District Judge

J:\DATA\SocialSecurity\MOOs\Pikeville\18-68 Ward MOO.docx